511 So.2d 130 (1987)
David Michael McFEE
v.
STATE of Mississippi.
No. 55947.
Supreme Court of Mississippi.
July 22, 1987.
*131 Guy M. Walker, Laurel, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Jack B. Lacy, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc:
GRIFFIN, Justice, for the Court:
This case, involving a rape, comes to the Court from the Circuit Court of the First Judicial District of Jones County. Upon conviction, the appellant, David Michael McFee, received a life sentence. We affirm.

I.
Between 8:15 and 8:30 a.m., on April 26, 1983, Joe Winstead went to the home of his *132 mother-in-law to check on her after she had failed to show up for work. Upon entering the bedroom, Winstead found her dead, lying on the bed. He put a cover over the body, then ran out of the room and called the Jones County Sheriff's Department.
Officer Morris Walker arrived on the scene between 8:45 and 9:00 a.m., and went into the victim's bedroom and, together with several other law enforcement officers, made an investigation at the scene.
Later Dr. Sergio Gonzalez, a pathologist specializing in forensic pathology, conducted an autopsy. Dr. Gonzales examined the victim's vaginal area where he found evidence of bruising and superficial lacerations at the entrance of the vagina. He stated that this bruising would be consistent with forcible sexual intercourse. He also noted some "defensive" wounds on the victim's arms. Finally, he combed hair from the pubic area, giving this sample to Mrs. James of the Mississippi Crime Laboratory.
Joe Andrews, a forensic scientist specializing in hair and fiber identification at the Crime Lab, examined the samples. The sample taken from the victim was compared with the sample taken from David Michael McFee. Andrews gave his opinion that some pubic hair taken from the victim's body had the same characteristics as McFee's. Andrews, however, admitted that he could not make a positive identification from a hair comparison; he could only eliminate a person using this technique. The characteristics of the hair found on the body with those of the known sample of McFee hair did not eliminate McFee.
On May 5, 1983, after he had been taken into custody by the Jones County Sheriff's Department, McFee made his first statement before a Mrs. Craven, Officer Morris Walters, Officer Summerall and Deputy Chief Paul Little. In that statement McFee admitted that he was at the victim's home on April 26, 1983.
On May 16, 1984, David Michael McFee was formally charged with rape in an indictment returned by the Jones County Grand Jury. Following disposition of several pre-trial motions, several of which will be discussed below, the case was called for trial in Circuit Court on August 8, 1984. Following presentation of the evidence for the prosecution  McFee presenting no evidence in his own defense  the jury returned a verdict finding McFee guilty of rape and imposing the sentence of life imprisonment. Following denial of the usual post-trial motions, McFee has appealed, where the matter is now ripe for review.

II.
McFee's first assignment of error is that the instant prosecution is precluded under the double jeopardy clauses of the federal and state constitutions. McFee has reference to the fact that he was originally indicted for the capital murder of the rape victim. Miss. Code Ann. § 97-3-19(2)(e) (Supp. 1986). McFee subsequently entered into plea negotiations with the district attorney as a result of which an agreement was reached whereunder the charges against McFee were reduced to murder and the State recommended a sentence of life imprisonment in exchange for which McFee agreed to testify for the prosecution at the trial of his co-indictee, Eric Fuselier.[1] The plea bargain was consummated to the extent that the charge against McFee was reduced, the guilty plea was entered and accepted by the circuit court, which imposed upon McFee the sentence of life imprisonment.
McFee's claim that the instant prosecution is precluded fails on several counts. First, he has not twice been put in jeopardy for the rape. In the capital murder indictment, McFee was charged with the underlying felony of burglary. Nothing in that indictment suggests that McFee committed rape. Insofar as the double jeopardy clauses are concerned, the prosecution was well within its prerogatives in seeking an indictment against McFee on the charge of rape, *133 and, thereafter, bringing the rape case to trial.[2]Smith v. State, 429 So.2d 252 (Miss. 1983); Hughes v. State, 401 So.2d 1100, 1103 (Miss. 1981).
McFee argues further that the plea-bargain agreement reached following the capital murder indictment encompassed all possible charges which might be brought out of the April 26, 1983, incident. McFee contends that the agreement of the prosecution was that, in exchange for McFee's plea and truthful testimony against Fuselier, the prosecution would not only dismiss the capital portion of the murder charge but further bound itself to commence no further prosecution arising out of the April 26 incident.
To be sure, while there is no constitutional right to enforcement of a plea bargain, Mabry v. Johnson, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984), Allen v. State, 465 So.2d 1088 (Miss. 1985), contractual principles of reliance may, under certain conditions, be enforced against the prosecution. Edwards v. State, 465 So.2d 1085 (Miss. 1986); Salter v. State, 387 So.2d 81, 84 (Miss. 1980). Here, however, the prosecuting attorneys wholly denied that there was ever any agreement that McFee would not be prosecuted on other charges. More important, the circuit court found as a fact that the terms of the plea-bargain agreement did not include an agreement by the State that it would not prosecute for the rape or any other charges that might arise out of the April 26 incident. As this finding is supported by substantial, credible evidence, we have no authority to reverse. See Neal v. State, 451 So.2d 743, 753 (Miss. 1984).
The assignment of error is denied.

III.
McFee next argues that the instant rape prosecution was tainted by prosecutorial vindictiveness and is accordingly barred. The claim appears to stem from the fact that McFee testified at the Fuselier trial in a manner quite different from that which had been anticipated by the prosecution. See Fuselier v. State, 468 So.2d 45, 47-52 (Miss. 1985).
Common sense may well leave a reader of the proceedings at the Fuselier trial with the definite impression that the district attorney was quite miffed over McFee's vacillating memory of the events of April 26, 1983. Yet, however much he may believe that the instant rape prosecution was improperly motivated, McFee has simply not made his proof.
The assignment of error is denied.

IV.
McFee challenges the legal sufficiency of the evidence to undergird a verdict of guilty of the crime of rape. If we appreciate the point correctly, McFee is arguing that the evidence for the prosecution was so inadequate that his motion for a directed verdict of acquittal should have been granted. Alternatively, we understand McFee to challenge the weight of the evidence and to argue that in any event a new trial should be ordered.
When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence  not just that supporting the case for the prosecution  in the light most consistent with the verdict. We give prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty, reversal and discharge are required. On the other hand, if there is in the record substantial evidence of such quality and weight that, having in mind the beyond a reasonable doubt burden of proof standard, reasonable and fair-minded jurors in the exercise of impartial *134 judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb. See, e.g., Gavin v. State, 473 So.2d 952, 956 (Miss. 1985); May v. State, 460 So.2d 778, 781 (Miss. 1984).
McFee was brought to trial under an indictment charging him with the crime of rape. Miss. Code Ann. § 97-3-65(2) (1972). Before he could be convicted, the prosecution was required to prove that McFee had non-consentual sexual intercourse with the victim, a female person above the age of twelve years, by the use of force or threatening the use of force. Having in mind this definition of the offense and the established parameters upon our authority to review the jury's verdict, we note the following: The fact that the victim was raped was established by the testimony of Dr. Gonzalez. As a part of his autopsy, Dr. Gonzales examined her vaginal area and found trauma consistent with recent forcible sexual intercourse. The photograph, State's Exhibit 2, reflected that the victim's pajama bottoms had been torn sufficient to allow access to the pubic area. The fact that she was found dead was more than sufficient to allow an inference that force was used in connection with the rape. Moreover, Dr. Gonzalez testified, without defense objection, that he found wounds on her arms consistent with one trying to fend off an attacker.
Proof that a rape occurred, the corpus delecti, is only a part of the State's burden. The prosecution offered testimony that the victim's pubic area was combed by State Crime Lab authorities and that there was found "One pubic hair of caucasian origin which exhibits the same microscopic characteristics as the known pubic hairs of David McFee."
On cross-examination, the Crime Lab expert conceded that he could "not make a positive identification from a hair comparison." The hair sample comparison is a technique of exclusion, not positive identification. The evidence reflected that two individuals were present in the victim's home on the morning of April 26, 1983: Eric Fuselier and David McFee. Joe E. Andrews, Jr., State Crime Lab Forensic Scientist specializing in hair and fiber identification, testified that he compared the pubic hairs found in the pubic area of the victim's body with known pubic hairs from both David McFee and Eric Fuselier. Andrews found no hairs that exhibited the same microscopic characteristics as those of Fuselier. Fuselier, therefore, was excluded.
The exclusion of Fuselier, coupled with McFee's presence on the scene, the identification of a pubic hair possessing the same characteristics as McFee's, and the proof that the victim had been raped, are sufficient to place the jury's verdict beyond our authority to disturb. It may well be, as defense counsel argue, that there are many other men whose pubic hairs possess the same characteristics as that found on the victim's body; yet, there is no evidence in the record that any of those others were present in her home on the morning of April 26, 1983.
This assignment of error is denied.

V.
Lastly, McFee contends that the prosecution prejudiced the jury with repeated references to the victim's death, allowing the jury to infer a connection with the rape, for which McFee was on trial. Specifically, McFee objects to the introduction of photographs showing the victim's body and to the prosecutor's remarks during opening and closing arguments. These instances, viewed individually and corporately, are not grounds for reversal.
Previously, this Court has held that the admissibility of photographs rests within the sound discretion of the trial judge, whose decision will be upheld absent abuse of that discretion. Kelly v. State, 463 So.2d 1070, 1074 (Miss. 1985). See also, Watson v. State, 483 So.2d 1326, 1328 (Miss. 1986); Stevens v. State, 458 So.2d 726, 729 (Miss. 1984); Sharp v. State, 446 So.2d 1008, 1009 (Miss. 1984). Yet, photographs which are gruesome or inflammatory and lack an evidentiary purpose are always inadmissible as evidence. Cabello *135 v. State, 471 So.2d 332, 341 (Miss. 1985); Billiot v. State, 454 So.2d 445, 459-60 (Miss. 1984).
In the present case, the State introduced two photographs, one showing the lower portion of the victim's body, clad in blood-stained pajama pants, torn to expose the pubic area, and the other again depicting the lower portion of the victim's body, this time clearly situated on the side of a bed, with her feet touching the floor. Neither photograph displayed any stab wounds nor manifested an ordinately gruesome scene. See Lewis v. State, 454 So.2d 1306, 1307 (Miss. 1984); Groseclose v. State, 440 So.2d 297, 301 (Miss. 1983).
Certainly, both photographs were sufficiently relevant and material to support their admission. For example, the first photograph, which showed the torn pajama pants, was evidence to support the State's contention of non-consentual sexual intercourse. The second photograph, which showed the crime scene, was admissible as well. Gardner v. State, 455 So.2d 796, 800 (Miss. 1984). In addition, this Court has consistently allowed photographic evidence to support the testimony of witnesses, here, Joe Winstead and Officer Morris Walters, who described the scene upon their respective arrivals. Edwards v. State, 413 So.2d 1007, 1011 (Miss. 1982); Hughes v. State, 401 So.2d 1100, 1106 (Miss. 1981); Irving v. State, 361 So.2d 1360, 1366 (Miss. 1978).
Moreover, Mississippi Supreme Court Rule 11 states, "No judgment shall be reversed on the ground of ... improper admission or exclusion of evidence, ... unless it shall affirmatively appear, from the whole record, that such judgment has resulted in a miscarriage of justice." Even if the Court then had found the photographs' admission improper, there is no affirmative appearance of injustice under the factual circumstances of this case previously outlined to permit a reversal of the conviction. See, Sharp v. State, 446 So.2d 1008, 1009 (Miss. 1984).
McFee next contends that the trial court erred when it failed to grant a mistrial based upon the prosecutor's remarks during opening and closing arguments. In particular, McFee maintains that the prosecutor's reference to him as "animalistic," as well as to the victim's stab wounds during opening argument, and to his comment that the "only thing that will put [the victim's] spirit to rest is to convict the Defendant for the crime that this man committed," during closing argument, was highly prejudicial to the defense, requiring reversal.
Where a prosecutor engages in conduct such that the defendant's right to a fair trial is substantially impaired, and where the trial judge improperly fails to grant a mistrial, this Court will reverse on appeal. Hickson v. State, 472 So.2d 379, 384 (Miss. 1985); Clemons v. State, 320 So.2d 368, 372 (Miss. 1975); Pieratt v. State, 235 So.2d 923, 924-25 (Miss. 1970). Yet, a timely objection, promptly sustained with an instruction for the jury to disregard the prosecutor's comments, is generally sufficient to dissipate any taint of prejudice. Johnson v. State, 477 So.2d 196, 210 (Miss. 1985); Hanner v. State, 465 So.2d 306, 311 (Miss. 1985); Terrell v. State, 262 So.2d 179, 181 (Miss. 1972).
In the present case, the prosecutor characterized McFee as "animalistic," when referring to the victim's stab wounds. McFee's counsel objected, asking both for an instruction to disregard the comments and for a mistrial. The trial judge then told the jury to disregard the prosecutor's description of the defendant, but denied the motion for a mistrial.
Clearly, it is impermissible for the prosecutor to abuse or vilify the defendant in his arguments before the jury, thereby appealing to its passion or prejudice. Curry v. State, 328 So.2d 328, 330 (Miss. 1976); Stewart v. State, 263 So.2d 754, 758-59 (Miss. 1972), Craft v. State, 226 Miss. 426, 434, 84 So.2d 531, 534-35 (1956). Yet, consistent with the authority cited above, there is no error where, as here, the trial judge sustains a seasonable objection, instructing the jury to disregard the comment.
*136 Though not assigned as error, the Court also notes the exchange between the prosecutor and Dr. Sergio Gonzalez, a board certified pathologist, who testified for the State. When asked, "From your examination, could you determine whether or not [the victim] had shown any resistance toward her attacker?" he answered, "Well, this lady sustained forty-one stab wounds and obviously... ." At this point, defense counsel objected. The trial judge, though overruling the objection, then stated, "Let me make this explanation to the jury. We are trying a rape case only in this trial and that's the only thing we are trying, is a rape case." Bearing on the issue of the evidence's cumulative effect, we again hold that a jury is presumed to follow the trial judge's instructions. Arteigapiloto v. State, 496 So.2d 681, 685 (Miss. 1986); Cabello v. State, 490 So.2d 852, 857 (Miss. 1986); Sand v. State, 467 So.2d 907, 911 (Miss. 1985).
Finally, McFee contends that the lower court erred when it refused to grant a mistrial, based upon the prosecutor's remark in closing argument that the victim's spirit would rest more easily upon the defendant's conviction. Based upon the evidence necessarily presented to the jury and discussed below, its members were already aware of the victim's death. They were also aware that the charge then pending against McFee was rape.
The cases previously cited which hold that a jury is presumed to follow a trial judge's instruction gravitate against a reversal. To hold otherwise, this Court must give weight to an alleged insinuation, cryptic at best, overturning a jury's verdict, which is not against a preponderance of the evidence nor clearly the result of prejudice, bias, or fraud. Dorrough v. State, 437 So.2d 35, 36-37 (Miss. 1983); Ainsworth v. State, 304 So.2d 656, 657 (Miss. 1974); Landers v. State, 304 So.2d 641, 642 (Miss. 1974). Indeed, there is nothing to suggest that such a remark concerning a victim's spiritual repose, whether dead or alive, is in itself grounds for reversal.
In sum, McFee contends that the cumulative effect of the alleged errors was sufficient to prejudice the jury, essentially allowing the State to convict him not of rape, but of murder. Yet, as discussed, neither the introduction of the photographs nor the prosecutor's comments constituted reversible error. As there was no reversible error in any part, so there is no reversible error to the whole.
In Gray v. State, 351 So.2d 1342, 1345 (Miss. 1977), the Court stated,
It is well settled in this state that proof of a crime distinct from that alleged in an indictment is not admissible against an accused. There are certain recognized exceptions to the rule. Proof of another crime is admissible where the offense charged and that offered to be proved are so connected as to constitute one transaction, where it is necessary to identify the defendant, where it is material to prove motive and there is an apparent relation or connection between the act proposed to be proved and that charged, where the accusation involves a series of criminal acts which must be proved to make out the offense, or where it is necessary to prove scienter or guilty knowledge. (emphasis added).
See also, Graves v. State, 492 So.2d 562, 564 (Miss. 1986); Trunell v. State, 487 So.2d 820, 825 (Miss. 1986); Minor v. State, 482 So.2d 1107, 1111 (Miss. 1986). In short, evidence of a defendant's other crimes is admissible, where it is "integrally related in time, place, and fact" to that for which he stands trial, thereby permitting the State to tell a "rational and coherent story of what happened to [the victim]." Neal v. State, 451 So.2d 743, 759 (Miss. 1984).
In this case, the victim suffered rape and murder on April 26, 1983. The attendant circumstances, including the victim's death, were necessarily admissible, where otherwise, the State would be unable to present its proof of the rape. Though unfortunate, references to other crimes committed against the same victim at the same time by the same defendant are sometimes required in the interest of justice. Here, the trial judge properly admitted into evidence photographs relevant and material to the rape, instructed the jury to disregard the *137 prosecutor's comment concerning McFee's "animalistic" nature, and cautioned it to consider only the charge of rape when ruling on the pathologist's statement relating to the multiple stab wounds which evidenced the victim's defense to her attacker.
Significantly, this case does not involve prosecutorial misconduct sufficiently grievous to merit a reversal. But see, Hughes v. State, 470 So.2d 1046, 1048 (Miss. 1985); Eubanks v. State, 419 So.2d 1330, 1332 (Miss. 1982); Collins v. State, 408 So.2d 1376, 1381 (Miss. 1982); Massey v. State, 393 So.2d 472, 474-75 (Miss. 1981); Killingsworth v. State, 374 So.2d 221, 225 (Miss. 1979); Sumrall v. State, 272 So.2d 917, 919 (Miss. 1973). Rather, the prosecutor's remarks met with proper rulings and comments from the bench.
The assignment of error is denied.
Consistent with the above, we affirm.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE, P.J., and DAN M. LEE and ANDERSON, JJ., concur.
ROBERTSON and PRATHER, JJ., concur in Sections I-IV and dissent as to Section V.
SULLIVAN, J., joins in the dissent portion only of J. ROBERTSON'S Opinion.
HAWKINS, P.J., and SULLIVAN, J., dissent.
HAWKINS, Presiding Justice, dissenting:
I respectfully dissent.
That the prosecution deemed this is a weak case is demonstrated by the fact no indictment for rape was sought until McFee committed perjury in the state's case against Fuselier. See Fuselier v. State, 468 So.2d 45 (Miss. 1985). For this perjury he was subsequently indicted, tried and convicted, and his conviction affirmed on appeal to this Court. See: McFee v. State, 510 So.2d 790 (Miss. 1987).
McFee is destined to be in the state penitentiary for a very long time, and I doubt whether our affirmance in this case will affect its duration, one way or another.
My concern is whether the state met its burden of proof in this purely circumstantial case of whether McFee raped this victim whom he and Fuselier have been found guilty of murdering.
There is a distinction recognized in law between a case depending on circumstantial evidence for conviction and every other criminal case. In a circumstantial evidence case, the state must not only prove the accused guilty beyond all reasonable doubt, but in addition, "to the exclusion of every other reasonable hypothesis than that of guilt." If such an instruction is to mean anything, it should be applied in this case.
It is not at all an unreasonable hypothesis, and I do not believe the majority will so contend, that the victim did not have sexual intercourse with anyone.
Nor, do I believe the majority will contend it an unreasonable hypothesis that if she had had intercourse at some time prior to her death it could have been with someone other than McFee. There is absolutely nothing in the record to enlighten us one way or another.
We are not talking about a hypothetical statistical likelihood, we are talking about a reasonable, rational hypothetical alternative.
It may not be statistically likely some individual will be struck by lightning as he prepares to cross a street, yet no one would contend that such an event could not reasonably occur.
The area around this victim's vagina was bruised. She may or may not have had sexual intercourse. A caucasian pubic hair was found in the victim's pubic hair. It could very well have been someone other than McFee's pubic hair. Since the evidence that McFee raped her does not exclude every reasonable alternative hypothesis, I would reverse. See: Fisher v. State, 481 So.2d 203 (Miss. 1985); Billiot v. State, 454 So.2d 445 (Miss. 1984); Williams v. State, 445 So.2d 798 (Miss. 1984); Tubbs v. State, 402 So.2d 830 (Miss. 1981); Williamson *138 v. State, 229 Miss. 305, 90 So.2d 657 (Miss. 1956).
SULLIVAN, J., joins this opinion.
ROBERTSON, Justice, concurring in part, dissenting in part:
I concur in Sections I through IV of the majority opinion. Because the accused has been indicted for rape only to find the prosecution spending as much of its time proving that he committed murder  highlighted by the pathologist's testimony that the victim was stabbed 41 times, I dissent from Section V.[1] I would reverse and remand.
Specifically, David Michael McFee argues that the trial court erred when it allowed the prosecution to prove and argue that Gunter had been stabbed 41 times. Related to this, McFee assigns error in the trial court's refusal to grant a mistrial as a result of the district attorney's closing argument that "the only thing that would put Rose Gunter's spirit to rest would be the conviction of the defendant for the crime he had committed." I would couple these assignments of error with two other related assignments wherein McFee complains, in effect, that the prosecution was allowed to (re)try him for murder, not rape, although upon his plea of guilty McFee was already serving a sentence of life imprisonment for the murder of Rose Gunter.
The general rule in this state, enunciated in a variety of contexts, has heretofore[2] been that the issue on a criminal trial should be single and that the evidence should be limited to what is relevant to the single issue. Bolin v. State, 489 So.2d 1091, 1092 (Miss. 1986); Brown v. State, 483 So.2d 328, 330 (Miss. 1986); Crafton v. State, 200 Miss. 10, 14, 26 So.2d 347, 348 (1946). Evidence of other criminal activity on the part of an accused is inadmissible where the prior offense has not resulted in a conviction.[3]Tobias v. State, 472 So.2d 398, 400 (Miss. 1985); Donald v. State, 472 So.2d 370, 372 (Miss. 1985); Hughes v. State, 470 So.2d 1046, 1048 (Miss. 1985); Tucker v. State, 403 So.2d 1274, 1275 (Miss. 1985); Eubanks v. State 419 So.2d 1330 (Miss. 1982).
Where the prior offense has resulted in a conviction, evidence thereof is ordinarily admissible for impeachment purposes only. Washington v. State, 478 So.2d 1028, 1033 (Miss. 1985); Johnson v. State, 452 So.2d 850, 854 (Miss. 1984). The fact of the conviction is all that the party attacking the credibility of the witness is allowed to show. No facts and circumstances may be shown except by way of explanation by the party whose credibility is attacked. Gallion v. State, 469 So.2d 1247, 1249 (Miss. 1985). We have never held that prior convictions in this manner were admissible on grounds that they were evidence relevant to the matter of whether the accused was guilty of the offense charged in the indictment.
The reasons for the general rule have been often stated. Eighty-eight years ago, in Herman v. State 75 Miss. 340, 22 So. 873 (1898) we stated:
This rule is founded in reason, for to allow the introduction of evidence of other and distinct offenses would confuse and mislead the jury as to the real issue to be determined, would prejudice the *139 prisoner by irrelevant matter, and would require him to meet charges foreign to the specific offense laid to his charge.
75 Miss. at 345, 22 So. at 873. This statement has been approved in May v. State, 199 So.2d 635, 641 (Miss. 1967).
More recently, a court unanimous on this issue gave us the rationale of the rule
that evidence of other crimes may tend to prejudice the minds of the jurors or confuse them as to the real issues on trial.
Caldwell v. State, 443 So.2d 806, 810 (Miss. 1983), reversed on other grounds; 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). We have made it clear that we will reverse where the jury was presented evidence
of other crimes and immorality [which] destroyed the possibility of a fair trial upon the charge in the indictment... .
Sumrall v. State, 272 So.2d 917, 919 (Miss. 1973).
The substantial evidence presented below regarding the murder of Rose Gunter, when the accused was on trial for rape, is precisely the sort of evidence the rule does, and was intended to, exclude. The prosecution here was allowed to charge its case under the instant indictment with detailed proof and impassioned argument that Gunter had been brutally murdered. This under our law the prosecution simply may not do. Tucker v. State, 403 So.2d at 1275; Crafton v. State, 200 Miss. at 14, 26 So.2d at 348 (1946).
Notwithstanding these considerations, the majority proceeds upon the basis of our well established exception to the single issue rule in cases where the offense charged and those offered to be proved are so connected so as to constitute one transaction, where it is necessary to identify the defendant, to prove motive and where there is an apparent relation or connection between the act proposed to be proved and that charged, or where the accusation involves a series of criminal acts which must be proved to make out the offense, or where it is necessary to prove scienter or guilty knowledge. See, e.g., Thomas v. State, 495 So.2d 481, 483 (Miss. 1986); Blair v. State, 445 So.2d 1373, 1375 (Miss. 1984); Gray v. State, 351 So.2d 1342, 1345 (Miss. 1977).
These exceptions to the general rule are reasonable and necessary. Turner v. State, 478 So.2d 300, 301 (Miss. 1985); Neal v. State, 451 So.2d 743, 759 (Miss. 1984). They have been carried forward into the Mississippi Rules of Evidence. See Rule 404(b), Miss.R.Ev. Where substantially necessary to present to the jury the complete story of the crime, including the accused's motive, opportunity, intent, preparation, plan, knowledge or identity, evidence or testimony may be given even though it may reveal or suggest other crimes. Brown v. State, 483 So.2d 328, 330 (Miss. 1986). These holdings are made necessary by the danger that, otherwise, testimony by the witnesses for the prosecution too carefully manicured might lead alert jurors to the thought that something of importance was being withheld. Such suspicions on the part of jurors could lead to a mischievous miscarriage of justice.
What must be kept in mind is that these exceptions to the general rule contemplate evidence that it is "necessary" for the prosecution to adduce in order to make out its case or tell a coherent story. For example, Lockett v. State, 459 So.2d 246, 253 (Miss. 1984)[4] allows evidence of other crimes where such is "necessary to identify the defendant" or "necessary to prove scienter or guilty knowledge." 459 So.2d at 253. [Emphasis added] That Rose Gunter was found dead by her son-in-law and that Dr. Gonzalez examined her dead body to establish that a rape had occurred were obviously facts that may be told the jury. On the other hand, I do not believe the prosecution would seriously argue that in order to prove the elements of the rape of Rose Gunter it was reasonably necessary to present a pathologist's testimony that "this lady sustained 41 stab wounds."
*140 At the risk of repetition and to the end that I not be misunderstood, I would not hold inadmissible any reference to the killing of Rose Gunter or of David McFee's participation in it. Such evidence falls within the exception to the general rule. Neal v. State, 451 So.2d 743, 759 (Miss. 1984); Carter v. State, 450 So.2d 67, 69 (Miss. 1984). I do, however, regard it as impermissible for prosecution witnesses in the course of describing the events of April 26, 1983, to go beyond what is reasonably necessary and in this rape case produce evidence that Gunter had been stabbed 41 times, followed by the district attorney's argument to the jury that "the only thing that would put Rose Gunter's spirit to rest would be the conviction of the defendant for the crime he had committed." What is particularly wrong with this argument is that it could only cause the jury to think of Gunter's 41-stab murder as the crime McFee had committed. But, McFee had already been convicted of that crime, and had received a life sentence for his efforts.
So long as the testimony involving such other crimes is incidental to the telling of the story of that charged in the indictment, there is no error. Where the other crime becomes the central crime for which the accused is in fact being prosecuted, there is error. To be sure, the outer limits of this exception to the rule are and necessarily must remain fuzzy. The touchstone is and always remains the concept of relevancy which in turn is anchored to the charge in the indictment. Compare Rule 401, 402 and 404(b), Miss.R.Ev., effective January 1, 1986. What is clear, however, is that when the proof offered by the prosecution respecting a crime other than that charged in the indictment is so extensive that it would be that which one would expect if the other crime were the one for which the accused is on trial, the outer bounds of relevancy have been exceeded. And, the same of final argument to the jury.
Bearing in mind that McFee was on trial for the rape of Rose Gunter, I would note that evidence of the murder of Rose Gunter presented to the jury included the following: Joe Winstead testified that on the morning of April 26, 1983, he went to Gunter's home and found her in the bedroom "laying there dead on the bed." State's Exhibit 1 is a photograph of Gunter's body lying on the bed with her feet hanging off the bed onto the floor. The color photograph reflects that Gunter had on her pajama bottoms with apparent blood stains all over each leg. Deputy Sheriff Morris Walters testified that he came to the scene a short while later to commence an official investigation and he found Gunter dead. Through Deputy Sheriff Walters, an additional photograph was introduced, again in color reflecting considerable blood stains on the pajama pants legs. This photograph, however, was probative of the charge of rape in that it reflects that the top of the pajama pants had been torn and that the pubic area was exposed.
Then came the dramatic moment, the moment which to my mind tips this case over the reversal line. Dr. Sergio Gonzalez, forensic pathologist, testified that he performed an autopsy on the body of Rose Gunter and in the course of his testimony volunteered that "This lady sustained 41 stab wounds."[5] At this point the Circuit Court sustained the defense objection and admonished the jury:
We are trying a rape case only in this trial and that is the only thing we are trying, is a rape case.
Although the trial judge should certainly be commended for trying, I do not see how he or anyone else could seriously expect a jury of human beings to have the capacity to disregard what they had just heard  that the victim had been stabbed 41 times. As a matter of institutional necessity, we indulge in the presumption that jurors follow the instructions of the court. We should not carry this indulgence so far as to destroy our credibility in the court of common sense.
*141 I find Assignments of Error Nos. 3, 6 and 8, in the aggregate, with merit and, accordingly, reverse. See Collins v. State, 408 So.2d 1376, 1380 (Miss. 1982).
PRATHER, J., joins in this opinion.
SULLIVAN, J., joins in dissent portion only of this opinion.
NOTES
[1] We reviewed the Fuselier trial and specifically McFee's testimony on that occasion in Fuselier v. State, 468 So.2d 45, 47-52 (Miss. 1985).
[2] Had McFee been acquitted on the capital murder/burglary charge, it may well have been that the rape prosecution would have been precluded. See Sanders v. State, 429 So.2d 245 (Miss. 1983).
[1] The point I make here is akin to what I have said in my separate opinion in Stringer v. State, 500 So.2d 928, 947-52 (Miss. 1986), although I consider the prosecution's sins in Stringer far more egregious than those found here. Without the unforgettable "41 stab wounds" comment, this would be a close one. That comment, plus the other "murder" evidence adduced at McFee's trial, requires reversal here in that the evidence of McFee's guilt on the rape charge, while sufficient to withstand post-verdict appellate attack, was a good bit short of overwhelming.
[2] I use the word "heretofore" because the courts of this state now operate under the Mississippi Rules of Evidence, effective January 1, 1986. For all cases tried after that date, Rules 401-404, Miss.R.Ev., should be consulted on issues such as today's. See Stringer v. State, 500 So.2d 928, 948 (Miss. 1986) (concurring opinion). Suffice it to say that today's case is a pre-Rules case.
[3] As the scope of argument by counsel is generally thought limited to facts legitimately in evidence, a similar limitation applies to opening statements and final argument by the prosecuting attorney.
[4] I consider the "absolutely necessary" standard originating in Dabney v. State, 82 Miss. 252, 255, 33 So. 973 (1903) cited recently in Williams v. State, 463 So.2d 1078, 1080 (Miss. 1985) as so much loose talk which we ought read to mean "reasonably necessary."
[5] Were the Mississippi Rules of Evidence in effect, I would also consider that the probative value, if any, of this evidence is substantially outweighed by the danger of unfair prejudice to the accused. Rule 403, Miss.R.Ev.