IRVING, J.,
for the Court.
¶ 1. George L. Bates was convicted in the Circuit Court of Tate County of one count of causing disfigurement and permanent disability to another while operating a vehicle under the influence of intoxicating liquor, and one count of failing to remain at the scene of an accident involving disfigurement and permanent disability of another. Bates was sentenced to concurrent terms of imprisonment of six and five years, respectively, and was ordered to pay restitution to the victim.
¶ 2. On appeal, Bates raises the following issues which we quote verbatim:
I. THE TRIAL COURT ERRED IN DENYING THE APPELLANT’S MOTION FOR A JUDGMENT NOTWITHSTANDING THE VERDICT.
II. THE TRIAL COURT ERRED IN DENYING APPELLANT’S MOTION FOR A NEW TRIAL.
¶ 3. We find no error; therefore, we affirm Bates’s conviction and sentence.
FACTS
¶ 4. On Friday, August 27, 2004, Terry and Alice Hammersmith were riding their motorcycles single file on Hammond Hill Road, a two-lane road in Tate County. As the couple was heading south on Hammond Hill Road, Terry observed oncoming headlights over the hill. Terry moved toward the right-hand side of the road and looked in his rear-view mirror to make sure that his wife had pulled over behind him, as was their custom when they faced oncoming traffic on a two-lane road.
¶ 5. Terry got over as far as he could, but was forced off the road by a white Ford pickup, driven by Bates, which was traveling toward them in the southbound lane. Unable to control his motorcycle, Terry fell. As he was falling, he heard the impact of the truck with his wife’s motor *222 cycle and her screams as she was thrown from her motorcycle into a ditch. As a result of the collision, Alice lost a foot. Johnny Wilson was following Bates in his vehicle and witnessed the accident. He stopped briefly to ascertain whether Bates’ truck had struck Alice.
¶ 6. At the time of the accident, Bates had just left a gathering of friends where he and the other men had consumed “about a case or two” of beer. Bates left the scene of the accident without identifying himself or rendering any assistance to either Alice or Terry. While Terry was attempting to attend to his wife, Wilson also left the scene.
¶ 7. Terry provided officers with a description of the truck; however, the police did not receive any leads for several months. The following January, after learning that a reward had been offered, John Mabrey went to the sheriffs department with information concerning the accident. Based on the information from Mabrey, officers went to Bates’s home, interviewed him, and inspected his white Ford pickup truck. The officers observed damage on the side of Bates’ truck, extending from the front of the truck down the side quarter panel to where the quarter panel and door meet. The damage included an indentation in the side of the truck which matched the ball from the handle grips of Alice’s motorcycle. Bates provided no explanation for the damage to his vehicle and, at trial, testified that he had never been involved in any accident.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. Denial of Motion for Judgment Notwithstanding the Verdict

¶ 8. In this issue, Bates argues that the verdict of the jury is against the overwhelming weight of the evidence. Although he alludes to the weight of the evidence, we interpret that to mean sufficiency of the evidence, as a motion for a JNOY tests the sufficiency, not the weight, of the evidence. May v. State, 460 So.2d 778, 780 (Miss.1984). A motion for a JNOV “asks the court to hold, as a matter of law, that the verdict may not stand and that the defendant must be finally discharged.” Id. at 780-81. ‘Where a defendant has moved for [a] JNOV, the trial court must consider all of the evidence— not just the evidence which supports the State’s case — in the light most favorable to the State.” Id. at 781. In May, the Mississippi Supreme Court held that the State “must be given the benefit of all inferences that may reasonably be drawn from the evidence.” Id. (citing Glass v. State, 278 So.2d 384, 386 (Miss.1973)). When viewed in this light, if “reasonable men could not have found beyond a reasonable doubt that [the] defendant was guilty,” we must reverse. McFee v. State, 511 So.2d 130, 133 (Miss.1987). While at the same time, if the record indicates that there was sufficient evidence of such quality and weight that a reasonable and fair-minded jury could arrive at different conclusions, the verdict of guilty is “beyond our authority to disturb.” Id. at 134.
¶ 9. Bates argues that there was no in-toxilyzer or sobriety test performed to determine whether he was intoxicated at the time of the accident. It is Bates’s contention that the State was required to present evidence that he was “stumbling down drunk” to support its position that he was driving while under the influence of intoxicating liquor.
¶ 10. The record reflects that the trial court initially agreed with Bates, but upon further argument by the State, the court was convinced that the proof was sufficient to present the matter to the jury. Mississippi Code Annotated section 63-11-30(1) *223 (Rev.1996), subsections (a) and (b) provide that “it is unlawful for any person to drive or otherwise operate a vehicle within this state who is under the influence of intoxicating liquor [or who] is under the influence of any other substance which has impaired such person’s ability to operate a motor vehicle.” Nothing in these subsections requires the State to prove that Bates had a certain blood alcohol content. The State need only prove that Bates was either operating his vehicle while under the influence of intoxicating liquor or operating his vehicle while under the influence of any other substance which impaired his ability to operate a motor vehicle. Bates’s argument concerning the lack of an intoxi-lyzer or sobriety test would only be relevant had he been indicted under Mississippi Code Annotated section 63-11-30(1) (Rev.1996), subsection (c) which provides:
(1) It is unlawful for any person to drive or otherwise operate a vehicle within this state who (c) has an alcohol concentration of eight one-hundredths percent (.08%) or more for persons who are above the legal age to purchase alcoholic beverages under state law, or two one-hundredths percent (.02%) or more for persons who are below the legal age to purchase alcoholic beverages under state law, in the person’s blood based upon grams of alcohol per one hundred (100) milliliters of blood or grams of alcohol per two hundred ten (210) liters of breath as shown by a chemical analysis of such person’s breath, blood or urine administered as authorized by this chapter.
¶ 11. The State presented several witnesses, all of whom testified that everyone in attendance at the gathering was drinking beer, including Bates. The State also presented evidence that Johnny Wilson was following Bates home in case Bates needed help. Further, there was proof that Bates was over the centerline on the crest of the hill when the collision occurred. Thus, the State presented sufficient evidence from which the jury could reasonably conclude that Bates was under the influence of intoxicating liquor to the degree that his motor skills necessary to properly operate a vehicle were impaired.
¶ 12. Bates left the scene of the accident before police arrived; thus, there was no opportunity to conduct a field sobriety test. Further, the only evidence offered by Bates to prove that he was not intoxicated at the time of the accident was his testimony that when he drinks he leaves his truck with Wilson and Wilson’s wife. Bates explained that he does this because he is the caretaker of his elderly mother and he wants to ensure that, if anything were to happen, the Wilsons could take care of his mother. Bates fails to point to any evidence indicating that he was not drinking on the night of the accident. In the final analysis, there is simply no evidence to support a finding that reasonable men could not have found beyond a reasonable doubt that Bates operated his vehicle while under the influence of intoxicating liquor. We find no basis for concluding that Bates’s motion for judgment notwithstanding the verdict was improperly denied.

2. Denial of Motion for a New Trial

¶ 13. In this issue, Bates contends that the weight of the evidence presented does not support the trial court’s denial of his motion for a new trial. The decision to grant a new trial is discretionary with the trial court. McClain v. State, 625 So.2d 774, 781 (Miss.1993). It is well established that matters regarding the weight of evidence are to be resolved by the jury. Neal v. State, 451 So.2d 743, 758 (Miss.1984). The standard of review in determining whether a jury verdict is against the overwhelming weight of evi *224 dence is well settled. “[An appellate court] must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial.” Dudley v. State, 719 So.2d 180, 182(¶ 8) (Miss.1998) (citing Herring v. State, 691 So.2d 948 (Miss.1997)). “Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will [an appellate court] disturb it on appeal.” Id. Bates has to present enough evidence to meet this burden. For the reasons stated above, we cannot say that the evidence was such that allowing a conviction to stand on this evidence would result in an unconscionable injustice. Thus, finding no error, we affirm.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF TATE COUNTY OF CONVICTION OF COUNT I — FELONY D.U.I. CAUSING SERIOUS BODILY INJURY AND SENTENCE OF SIX YEARS, AND CONVICTION OF COUNT II — FAILURE TO STOP AT THE SCENE OF AN ACCIDENT AND SENTENCE OF FIVE YEARS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH SAID SENTENCES RUNNING CONCURRENTLY, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO TATE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.